This is a suit for damages in the sum of $400.48 for tortious entry and trespass by the defendant on plaintiff's land, without the latter's knowledge and consent, and the cutting and removing therefrom 5179 feet of select virgin pine timber. The trespass is alleged to have taken place on February 8, 1940 and to have come to plaintiff's knowledge the following day. Plaintiff claims the value of the timber taken, manufactured into lumber, without deducting the cost of manufacturing, as it is alleged that the trespass was done in moral and legal bad faith.
The defendant admits cutting and removing the timber but denies the trespass. It avers that the timber was cut and removed with the permission and consent of the plaintiff's agent and was to serve as poles for a derrick which it uses in connection with its sawmill and logging operations. It alleges further that the six trees which it cut scaled a total of 4817 feet, log scale, that the stumpage value was $15 per thousand feet and therefore it was willing to pay plaintiff the sum of $72.25 which it had already offered and which amount it was tendering with its answer at the time of filing the same.
In rendering judgment the trial judge held that under the evidence, the defendant had not acted in moral bad faith in cutting and removing the timber and therefore should not be held for its value in the manufactured state. He agreed with the plaintiff however in its measurement of the timber and allowed recovery for 5179 feet at $15 per thousand, thus making the award $77.69, and casting the defendant with the costs of suit. From the judgment so rendered the plaintiff has taken this appeal.
There seems to be no dispute between the parties with regard to the only point of law involved which is one concerning the measure of damages in case of trespass committed by cutting and removing timber from the land of another. In case the trespass is committed in moral bad faith the damage recoverable is the value of the timber as a manufactured product at the time it was cut. See Coignet et al. v. Louisiana Cypress Lumber Company, Ltd.,177 La. 1023, 150 So. 6. In the absence of moral bad faith the trespasser is only answerable for the stumpage value of the timber. See Allen v. Frank Janes Company, Ltd., et al.,142 La. 1056, 78 So. 115. We are therefore concerned in this case only with the question of the defendant's good faith or its moral bad faith in going upon plaintiff's land and removing therefrom, as it admits it did, the six pine trees scaling some 5000 feet of timber. This is a question which, of course, has to be decided on the facts that were produced and which are found in the record.
As we appreciate them, the facts are as follows: Both parties litigant are sawmill operators and had had some business dealings in buying and selling timber to each other before. Although there is no statement in the record to the effect that their previous relations had been cordial and pleasant, there is certainly nothing which would suggest that they were unpleasant.
On or about February 8, 1941, the derrick which is used for hoisting logs at the defendant's mill broke and had to be repaired if operations were not to be unduly delayed. The repairs required two timbers of a certain length which it knew it could obtain from the plaintiff. Accordingly, Mr. J.H. Anderson, its President, sent his brother, Jackson Anderson, to see Mr. M.F. Michael, plaintiff's agent, to obtain his permission to go upon its land and get the necessary timbers. The serious dispute in the case arises at this point. Mr. Jackson Anderson testifies that he obtained Mr. Michael's permission who told him to get Ezra Scott to go with him to pick the trees. Mr. Michael, on the other hand, states that although Mr. Jackson Anderson called at his office twice about that time, it was to see him regarding some *Page 241 
hard wood and also about their timber lines and never did he mention anything about purchasing any virgin pine timber. It is somewhat significant that Mr. Michael would not specifically deny, however, that subsequently to the cutting of the timber, in a conversation had in his office with Mr. J.H. Anderson, he stated that he had probably given Mr. Jackson Anderson permission to cut the trees.
But to get back to Mr. Jackson Anderson's version as to what took place we find him stating that in carrying out Mr. Michael's instructions he called at Ezra Scott's house to get him to go with him in the woods but he was absent at the time. Not to delay the matter he left word with Mrs. Scott asking her to have her husband meet him in the woods. He then went on with his crew which cut two trees which turned out to be too short for the purpose to be used and they then cut two more trees which, although of sufficient length, broke down when an accident happened in operating the derrick. The crew again returned to the woods and secured two more trees which turned out to be satisfactory. He scaled all of the six trees which had been taken and gave the measurements to his brother.
On February 9, 1940, Mr. J.H. Anderson addressed a letter to Mr. Michael informing him of the number of trees and the dimensions of each which had been taken and requesting a bill for what was used and for which he stated a check would be sent. Mr. Michael states that the receipt of this letter was the first information he had of the matter. Even so it would appear to have been given by the defendant as promptly as could have been expected but from the testimony of some of plaintiff's own men, the matter was reported to the office, if not to Mr. Michael himself, on the next day, or very probably on the very same day that the timber was taken. More important than all of this, it would seem that plaintiff was bound by the allegation of its petition that it had knowledge of the alleged trespass on February 9, 1940. Mr. Michael's testimony therefore by which he seems to want to convey the idea that the information came to him in the way of a surprise some days after the cutting and removing of the trees is inconsistent with the facts as set out in the petition and with the proof that is furnished partly by plaintiff's own witnesses.
In spite of this ready information which he had and the disclosure by defendant's letter of February 9th of the actual quantity of timber taken and its request for a bill, it was not until March 2, 1940, some three weeks thereafter, that he raised the issue in a letter written by him on that date to Mr. J.H. Anderson that a wilful trespass had been committed. The reaction to such culpable conduct as the defendant is charged with would, in our opinion, normally manifest itself sooner than this and it strikes us that in this case it came to Mr. Michael somewhat as an afterthought when he could not remember positively, in the absence of any written authority such as he says is usually granted by his company in such matters, that he had given Mr. Jackson Anderson permission to cut the timber.
Under the facts found in the record we believe that the district judge was justified in his conclusion that there had been no moral bad faith shown on the part of defendant and that it is only answerable to plaintiff for the stumpage value of the timber which is established at $15 per thousand. The number of feet does not seem to be disputed any longer and so the proper award was made.
Judgment affirmed at the costs of the plaintiff, appellant herein. *Page 242